## C. & T. SCHINDLER *v.* SMITH, BULLINS & CO.

There is no law requiring a personal service of a notice of garnishment; the law requires a personal service of the interrogatories as an exception to the general rule, but this Court cannot extend it to any other service.

The laws of attachment must be strictly construed and applied, otherwise they will not avail the attaching creditor.

The Act approved March 18, 1858, p. 176, provides that no seizure shall bind any property or effects, rights or claims in the hands of a garnishee, either under process of attachment or fieri facias, unless service of the interrogatories has been personally made upon such garnishee.

The garnishee, in the eyes of the law, is a mere stakeholder, a custodian of the property attached in his hands; he has no pecuniary interest in the matter; he has no costs to pay, and therefore none to save; his business is to let the law take its course between the litigants; he has no right to accept or waive service of the proceeding, thereby favoring one party at the expense of and injury to another, and creating actually a privilege with priority in favor of one creditor to the prejudice of another.

A PPEAL from the Third District Court of New Orleans, *Fellowes*, J. *E. W. Huntington*, curator ad hoc.    *Geo. L. Bright*, for garnishees.

*W. H. Hunt, for plaintiff.*—"An attachment by such process can be legally made only in one of two ways, either by the actual seizure and detention of the property of the debtor by the sheriff, or by garnishment process, that is, by the service of the copy of petition, citation, order and interrogatories upon the garnishee." *Nelson* v. *Simpson*, 9 An. 311. The statute of 1858, p. 178, provides that "no seizure shall bind any property, money or effects, rights or claims in the hands of a garnishee, either under process of attachment or fieri facias, unless service of the interrogatories has been personally made upon such garnishee."

The case of *Rightor* v. *Phelps*, 16 An. 104, is directly in point, and fully determines the insufficiency of the pretended seizures by Baur & Bohle. The Court there held, that if there be no actual seizure by the sheriff, his notice of seizure is untrue in itself, but it is, per se, a vain and useless thing; and that a seizure in garnishment is not considered made until the petition and interrogatories have been served on the garnishees.

The only question that remains for the consideration of the Court is, whether the waiver by the garnishees of services of copies of the petition, citation, order of attachment and interrogatories, endorsed on the petition of Baur & Bohle, before it was filed, constituted a legal attachment of the property of the defendants, Smith, Bullins & Co., and dispensed Baur & Bohle from the necessity of executing the process of attachment by the sheriff, and according to the requirements of the law? Does an express waiver of process produce the effect which such process, if issued, would produce; or, in other words, does a waiver of process amount to

process ?   To waive process is to relinquish, not to insist on or claim it. Can it be pretended that process waived is still not relinquished, but is still insisted on or claimed ?   An attachment waived becomes an attachment relinquished.   An order of attachment waived becomes an order not claimed or insisted on.

Process of law can never become matter of commerce and barter between parties, to the injury of the rights of third persons.

An attachment in the hands of third persons, is a mandate which a creditor obtains from a competent judge, or from the clerk of his court, commanding the seizure of any property, credit or rights belonging to his debtor, in whatever hands they may be found, to satisfy the demands which he intends to bring against him.   C. P. Art. 239.

This mandate is issued in the sovereign name of the State, by its duly authorized officers.   " When the order has been given by the Court, the clerk of such Court shall deliver, or send to the sheriff, a copy of such mandate, together with a citation to the person made party to the suit, to answer said petition within the usual delay granted in ordinary cases.   C. P. Art. 251.

If there be a garnishee made a party to the suit, the clerk must deliver to the sheriff a copy of the petition and of the interrogatories annexed to it, with a summons directed to such garnishee, to answer the same within the delay given in ordinary suits (C. P. Art. 252); and the service of the interrogatories must be made personally on the garnishees by the sheriff.   Acts of 1858, p. 176.   The garnishee has no right to waive or accept it.

It is an infallible test of the validity of an attachment to inquire if the defendant has lost his control over the property and cannot change its destination.   Wherever the owner can control it, his creditors may attach.   Hennen's Digest, p. 135, No. 2.   If this test be applied to the property of Smith, Bullins & Co., after the signature of the waiver in the case of Baur & Bohle, it is evident that their pretended attachment is of no avail.   For the defendants were in no manner parties to the agreement between the garnishees and Baur & Bohle.   They were not divested of the control of their property by any such agreement.   They could be divested of such control only in two ways, either by their own act, or by due process of law.   Until divested in one or the other of these modes, their dominion over their own property was absolute and complete, and could not be interfered with by the garnishees.   These garnishees were therefore not justified in assuming the functions of owners of the property, or in volunteering to waive any process of law by which the predicament of such property might be affected to the prejudice of the owners' control, or the legal rights of the owners' creditors.   The law enjoins upon garnishees a strict and impartial neutrality.   It is held that they are not to interfere in the merits of the controversy between the

attaching creditors and the defendant, or others claiming what they hold. They are mere stakeholders, bound to disclose the truth. If their declarations be controverted, they may support them, and resist any judgment that will operate to their prejudice. As to them the questions are, whether they are indebted ; whether they can safely pay the attaching creditor, or whomsoever the Court may order them to pay to. 10 M. 568; 14 La.; 18 La. 405. These duties thus distinctly defined, are wholly inconsistent with the attempt made in this case, by the garnishees, to coöperate with Baur & Bohle in securing to them a preference over these plaintiffs, by the waiver of an order of attachment, or the acceptance of service of legal process before it was issued.

LABAUVE, J. The plaintiffs brought this suit on the 23d December, 1864, claiming of the defendants who are non-residents, the sum of $1,950, with interest, and garnisheeing at the same time, Bower, Garner & Harrison; citation, copy of petition, order of attachment and interrogatories were duly served on A. Bower, a member of said firm, on the 24th day of December, 1864, at twenty minutes after nine o'clock, A. M. On the 5th of January, 1865, in answering the interrogatories, they say :

"At the time of service of process herein, on our firm, to wit : on the 24th of December, 1864, we had no moneys, goods, property or merchandize belonging in whole or otherwise, to the defendants, Smith, Bullins & Co., except the sum of $776 74, and a balance of $446 51, on 100 barrels of flour, making a total of $1,222 25. Both the cash, viz : $776 74 and the flour were garnisheed in our hands, and seized in the suit of *Baur & Bohle* v. *Smith, Bullins & Co.*, No. 13053, of the Sixth District Court of New Orleans, on the 23d December, 1864, and before we received any notice of seizure and garnishment in this suit. At the same time we received notice of seizure and garnishment process in this suit, we also received them from the suit of *Mahoney & Stulz* v. *Smith, Bullins & Co.*, No. 18861 of the Third District Court * * * * We further state : at the time of the seizure and garnishment was made, we had nothing else belonging to Smith, Bullins & Co., but we had previously received and did then hold two bills of lading, one for 685 barrels of flour, and the other for 146 barrels of flour, shipped by Smith, Bullins & Co. to us, and to be delivered to us to secure advances and charges made by us on said flour to them, amounting to about $7,900. The exact amount is not stated, because the transaction and accounts are not fully complete; the flour is of the value of $9,547 51, which will leave a balance of not over $1,647 51, should the balance differ, respondents will pray leave to state hereafter the exact balance; the 1,005 barrels of flour were received by us on the 2d January, 1865, after the seizure made in this suit, and were seized by Baur & Bohle in their suit against Smith, Bullins & Co., No. 13053 of the Sixth District Court."

C. & T. Schindler v. Smith, Bullins & Co.

The plaintiff, having obtained a judgment against the defendants for their claim, took a rule upon the garnishees to show cause why judgment should not be rendered against them for the amount of their judgment against the defendants, and Baur & Bohle were made parties to this rule. The rule was made absolute.

The garnishees first pleaded to the jurisdiction of the Third District Court, on the ground that the Sixth District Court was the proper one to distribute the proceeds of property attached among the creditors, but that exception has been abandoned in this Court. But they contend that the notice of seizure in the suit of C. & T. Schindler, served on the garnishees, on the 23d December, 1864, at half-past three o'clock, P. M., by having the same at their counting-room in the hands of a clerk, being the bookkeeper, was illegal and should have been served personally on the garnishees. We know of no law requiring a personal service of such a notice; the law requires a personal service of the interrogatories as an exception to the general rules, we cannot extend it to any other service. Baur & Bohle also brought a suit against the said Smith, Bullins & Co., and they garnisheed the said Bower, Garner & Harrison, and attempted to attach the same property attached by plaintiffs, and the question arises as to who has priority between these two attaching parties. Both suits were filed on the same day, 23d December, 1864; before the filing of the suit of Baur & Bohle vs. Smith, Bullins & Co. Bower, Garner & Harrison, the garnishees, accepted service as follows: *Service of copies of petition, citation, order, and interrogatories received and service thereof accepted,* New Orleans, December 23d, 1864. Signed, Bower, Garner & Harrison. Notice of seizure was served upon them the same day by the Sheriff, at a quarter to six o'clock, P. M. The *waiver* and *acceptance* of service are written on the petition, and were made in the office of Baur & Bohle's attorney, before the filing and the existence of any order of attachment.

The laws of attachment must be strictly construed and applied, otherwise they will not avail the attaching creditor.

The Act approved March 18, 1858, p. 176, provides that no seizure shall bind any property or effects, rights or claims in the hands of garnishee, either under process of attachment or fieri facias, unless service of the interrogatories has been personal upon such garnishee.

Now the question arises : can a garnishee voluntarily accept or waive service of the proceedings which are directed by law, to be served by an officer of Court ?

We are of opinion he cannot, and if he do, it is not binding, either on another attaching creditor or on the debtor. The garnishee, in the eyes of the law, is a mere stakeholder, a custodian of the property attached in his hands; he has no pecuniary interest in the matter; he has no cost to pay, and therefore none to save; his business is to let the law take its course between the litigants; he has no right to accept or waive service of the proceeding, thereby favoring one party at the expense of

and injury to another, and creating actually a privilege with priority in favor of one creditor to the prejudice of another. Therefore, the said acceptance or waiver of service being a nullity, and the garnishees not having been legally served with the process in garnishment, nothing was attached by said Baur & Bohle, in the hands of the garnishees, on the 23d December, 1864. *Nelson* v. *Simpson*, 9 An. 311; *Rightor* v. *Phelp*, 16 An. 105.

Baur & Bohle, by a supplemental petition, took other proceeding in attachment on the 2d January, 1865; the same garnishees were duly served with the necessary proceedings, and the Sheriff took actual possession on board of the steamer Pauline Carroll, of the flour comprised in the two bills of lading, which were in the hands of said garnishees when they were duly served, on the 24th of December, 1864, with all the necessary proceedings in garnishment, in the suit of C. & T. Schindler; the control and legal possession of the flour were then in the garnishees' hands under the bills of lading, and out of the power of the debtors, and the carrier held the flour for said garnishees as holders of the bills. After shipment, the carrier holds the property for the lawful holder of the bill of lading; if it be drawn in the consignee's favor, the consignee's possession and control are gone, and with them his privileges as vendor. *Fetter* v. *Field*, 1 An. 80; see also 4 An. 452, 9 L. 322. Therefore the process of attachment served on the 24th December, 1864, by C. & T. Schindler, on Bower, Garner & Harrison, consignees and garnishees attached the flour in transitu, subject to the claims of said consignees; and when Baur & Bohle attempted to attach the same flour on its arrival in New Orleans, and on board the steamer, they could not affect the previous attachment of C. & T. Schindler.

But we think the judgment rendered below upon the rule, against the garnishees, must be modified. There are two concurrent attaching creditors; the plaintiffs in this case, who have obtained a judgment for $1,950, with interest, and Mahoney & Stutz v. the same defendants and garnishees, for $1,760, with interest, and it seems by their answers that the garnishees have in their hands only about $2,869 76, subject to distribution between the said two concurrent attaching creditors.

It is therefore ordered and decreed that the judgment appealed from, be so modified as not to make the said garnishees liable for more than they have in hand, say $2,869 76; to be proportionably distributed between said two concurrent attaching creditors, and that as amended the said judgment be affirmed, the appellees to pay the costs of appeal.